UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,      x   S5 02 Cr. 1237 (SWK)
                                    x
                                    x
                                    x    **OPINION & ORDER**
               -against-       x
                                      x
                                    x
ANGELO DIPIETRO ET. AL.,      x
                                    x
               Defendant.    x
------------------------------------X
**SHIRLEY WOHL KRAM, U.S.D.J.**

    On April 26, 2005 the Court began jury selection in this matter.  On April 27, 2005, while the parties were in the process of selecting alternate jurors and prior to the jury being empanelled and sworn, counsel for defendant Nicola Murdocca asked the Court for a brief recess because Murdocca appeared physically ill.  The Court granted Murdocca's request.  The events that unfolded thereafter were so dramatic that the Government now asks the Court to excuse the existing jury pool and begin jury selection anew on Monday, May 2, 2005.  Additionally, Mr. Murdocca seeks severance on, inter alia, medical grounds.

**FACTUAL BACKGROUND**

    Defendant Murdocca is one of six defendants in this matter.  Murdocca is currently undergoing chemotherapy for lung cancer and has no bladder.

1

Yesterday, at approximately 2:30 p.m., counsel for Murdocca, Solomon Kaplan, requested a 10-minute recess because Mr. Murdocca appeared to be "suffering and uncomfortable." See Tr. at 276. The Court granted Murdocca's request and instructed the jury to take a 10-minute break. At the time, there were 12 jurors and one prospective alternate juror in the jury box and a considerable number (perhaps 60-70) of prospective jurors in the gallery.

As counsel for Murdocca returned to the defense table, Murdocca's head fell back, his eyes rolled back in his head and he began audibly moaning in pain.[1] Murdocca's counsel, clearly concerned for his client's well being, shouted Murdocca's name and got no response. Murdocca then began foaming at the mouth.[2] His shirt was unbuttoned. Murdocca yelled out, "It's the cancer in my back." Many of the defense counsel admirably attended to Murdocca; however, one defense attorney was heard to say to FBI Special Agent Rico Falsone, in the presence of the jurors who remained in

---

[1] In fact, Murdocca's moaning was so intense that a member of the Court's staff removed a nearby microphone that was amplifying Murdocca's cries.
[2] It must be noted that even though his back was to the jury box, Mr. Murdocca's seat was directly in front of the jury box. At the time he began suffering, the parties agree that there were between 6 and 8 jurors still in the jury box.

the box, "didn't they teach you CPR at the FBI Academy?"[3] Several of the jurors also leaned over the rail of the jury box out of understandable concern for Murdocca.

The courtroom deputy phoned for urgent medical assistance and numerous people in the courtroom shouted to call 911. Several of the defendants and defense counsel rushed to Murdocca's assistance, as total pandemonium ensued. I returned to the bench and immediately instructed the jurors and prospective jurors to leave the courtroom. About ten minutes after clearing the courtroom, paramedics and the New York City Fire Department arrived, in full uniform, with a stretcher, walked past the jurors waiting in the hallway outside the courtroom and entered the courtroom to attend to Murdocca. So as to avoid any further contact with the jury pool, the paramedics were instructed to escort Murdocca out of the courtroom's rear exit, which they did.

After reconvening the parties and requesting their input on how to proceed, the Court released the jury panel for the day and ordered all parties, including jurors, to report at 9:30 a.m. the following morning. Prior to releasing the jurors, it was quite obvious that many

---

[3]  Notably, no member of the defense team denied this allegation at the hearing the Court held on this matter.

members of the pool were seriously affected by what had transpired.

Remarkably, when court was convened this morning, Murdocca was present at the defense table.[4] The Court, in the presence of the jury pool, noted Murdocca's presence for the record and indicated that he had been released from the hospital the night before. The Court also dismissed the jurors until 1:00 p.m. on April 28, 2005, to address the issue of possible contamination.

Between yesterday's incident and this morning's conference the Court received submissions from the parties. Further argument on the matter was heard this morning. The Government, as indicated previously, asks that the Court dismiss the pool and begin jury selection again next week. Defense counsel opposes the Government's request, asserting (for the most part) that further voir dire can cure any possible contamination from the events surrounding Murdocca's collapse.[5] The Court agrees with the Government.

---

[4] Murdocca was discharged from the emergency room last night, April 27, 2005, after being treated for dizziness. The Court is advised that Murdocca requires the immediate assistance of an oncologist.
[5] Counsel for defendant Angelo Capalbo does not believe that further voir dire is necessary.

**DISCUSSION**

At the outset, and on the Government's consent, the Court grants Murdocca's severance application. He is hereby severed from the other defendants in this matter. The Court will set a new trial date for Murdocca at a later time.

With respect to the application to start jury selection anew, there is, understandably, little case law. Some critical points of law, however, must be noted. First, because the jury has not been empanelled and sworn, jeopardy has not attached. See Crist v. Bretz, 437 U.S. 28 (1978). Second, the trial court has broad discretion, and in fact even has the duty, "to see that the jury as finally selected is subject to no solid basis of objection on the score of impartiality." See Frazier v. United States, 335 U.S. 497, 511 (1948).

Put simply, the Court finds that this jury pool, in light of the extreme trauma that unfolded in court yesterday, cannot be impartial. The Court does not make this decision lightly and is mindful of how much work has gone into selecting this particular jury; but there were too many significant causes for concern to continue with this pool. Most importantly, the bedlam in the courtroom, the chaos that occurred in the hallway outside the

courtroom amongst the jurors, and the inevitable discussion that occurred between members of the jury pool so taints the entire proceeding that the Court is convinced no remedy other than dismissal of the entire panel is adequate.[6] Second, the fact that numerous members of the defense team, including the defendants, rushed to Murdocca's side, while the Government, for various understandable reasons, was left to observe the situation, all in the presence of the jury, is extremely problematic. Third, the Court is deeply troubled by the comment of defense counsel to Special Agent Falsone, in the presence of jurors, that "didn't they teach you CPR at the FBI Academy?" The suggestion that the federal government callously disregarded Murdocca's condition, especially when considered alongside the fact that the only people attending to Murdocca were defendants and defense counsel, only bolsters the case that this jury has been irreparably contaminated.[7] Finally, the Court does

---

[6] It would have been impossible for any human being who observed what happened in Court yesterday not to be deeply affected by it. Such emotion, while understandable, would invariably contaminate the deliberative process.

[7] In support of its opposition, the defendants cite to numerous cases involving potentially prejudicial pretrial publicity and how it can be cured with an instruction or adequate voir dire. See, e.g., United States v. Hall, 536 F.2d 313, (8th Cir. 1976). Such cases are not illuminative in a situation where a defendant collapses in open court, foams at the mouth, cries out that he has cancer, and is attended to by his co-defendants and uniformed emergency

not find persuasive defense counsel's contention that the defendants will be prejudiced by having to select a new jury. Both the Government and the defendants indicated on the record that they were satisfied with the composition of the current jury. The Court accepts those representations. As a result, requiring each side to start fresh, with an uncontaminated pool, and the same number of peremptory challenges will not result in any prejudice. Accordingly, in light of the severe trauma of April 27, 2005, the Court will dismiss the current jury pool. As soon as a new pool can be provided, the Court will commence jury selection anew.[8]

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:    April 28, 2005
          New York, New York

---

workers. Further, while the Court accepts defendants' argument that there is no constitutional guarantee to a perfect jury, see Williams v. Woodford, 384 F.3d 567, 626-627 (9th Cir. 2004), there is a constitutional guarantee to an impartial jury.
[8] The Court is mindful of potential scheduling conflicts of counsel and will take all steps necessary to avoid such conflicts.